DEPARTMENT OF THE TREASURY

INTERNAL REVENUE SERVICE

OFFICE OF APPEALS

IN RE: ESTATE OF
JAMES D. GALLOWAY a/k/a J. D. GALLOWAY a/k/a JAMES DUANE GALLOWAY

FORMAL PROTEST

1. Name and address information:

   a. Name and address of representative for taxpayer:

      Name:    James R. Steadman, Esquire, Attorney for Edmond C. Galloway, Trustee of the James D. Galloway Revocable Living Trust

      Address: 24 Main Street East
               Girard, Pennsylvania 16417

      Phone:   (814) 774-2628 (daytime)

   b. Name and address of taxpayer:

      Name:    Edmond C. Galloway, Trustee of the James D. Galloway Revocable Living Trust

      Address: 10670 Route 18
               Albion, Pennsylvania 16401

      Phone    (814) 756-3604 (daytime)

2. I want to appeal the IRS findings set forth on the Report of Estate Tax Examination Changes dated August 30, 2000 for the Estate Tax Return for the Estate of James D. Galloway increasing the tax payable by $147,500.

3. I have attached a copy of the letter showing the proposed changes and findings with which I disagree.



4.  The tax period or years involved are inapplicable. This is an estate tax return. James D. Galloway died July 22, 1998.

5.  I **agree** with the finding that the amount of funeral and administrative expense should be reduced by $5,544. This is clearly tax due on income earned during the period of administration and was listed on the return in error.

    Following is a list of the changes which the Trustee does not agree with and his reasons for that disagreement, including the facts supporting his position and a discussion of the law or authority upon which he is relying:

    I **disagree** with the disallowance of the charitable deduction in the amount of $399,079 for funds which are required to be paid to the James D. and Ruth E. Galloway Scholarship Fund of the Federated Church and the WLD Ranch of the Federated Church. I believe this qualifies for a deduction under section 2055(a).

6.  **Statement of Facts**:

    The Federated Church traces its roots to the mid-1830s and is one of the largest Christian churches in western Erie County, Pennsylvania. There can be no doubt that the Federated Church qualifies as an appropriate recipient of a charitable bequest under Section 2055 of the Internal Revenue Code.

    The text of the James D. Galloway Revocable Living Trust consists of an initial trust and three subsequent amendments. The original Trust dated March 5, 1991 was prepared by counsel. It divided the residue of the estate among the grandchildren and great-grandchildren of Mr. Galloway. In May, 1994 the Declaration of Trust was amended without the assistance of counsel. In this amendment the identity of the residuary beneficiaries was changed to five specific named individuals. Again in July, 1995 the Declaration of Trust was amended without benefit of counsel and the identity of the residuary beneficiaries was again changed. Finally, on September 7, 1996 the Declaration of Trust was again amended without benefit of counsel and the present dispositive scheme was adopted.

    It was clearly not the intent of Mr. Galloway in creating this trust instrument to run afoul of the Internal Revenue Code. It is just as clear that it was his intent to benefit his church and in the process to secure a charitable deduction for the amount which was to be paid to the Church. Section 2055 of the Internal Revenue Code allows such a deduction for gifts or transfers to or for the use of any organization organized and operated exclusively for religious purposes. The Federated Church clearly is such an organization. It is the contention of the Trustee of the Revocable Living Trust that he will make and is entitled to the deduction for the such a transfer.

    Under the terms and provisions of the final version of the trust instrument, there is no discretion on the part of the Trustee to pay any amount provided for the

Church to any other beneficiary. The Church and the individuals receive the benefit of both the income from the Trust and the ultimate distribution of the principal of the Trust. Indeed, there is very little discretion on the part of the Trustee as to the nature of the investments.

The only contingencies provided in the Trust are that in the event that either of the individual beneficiaries (the son and granddaughter of the decedent) of the Trust should die, their share in the principal is to be divided among the remaining beneficiaries. Since the Trust will continue in effect until 2016, there is a possibility of the death of either or both of the two individual beneficiaries, but there is no chance at all that the Church will not be in existence to receive the funds. In essence this Trust created not a split-interest trust where the interests of the income beneficiaries and residuary legatees are different, but rather two parallel trusts, one charitable and one non-charitable in nature. Both are required to have the same investments and both have the same amount of principal. Both receive the same income. One beneficiary cannot be preferred over another.

7.  **Basis for Claim of Deduction:**

    It is this parallel interest which distinguishes the Galloway Estate from the cases and examples under which the charitable deduction fails. In hearings held before the enactment of Section 2055 (e), Congress attempted to address the potential abuses attendant in the use of split-interest trusts with charitable remainders. The House Ways and Means Committee observed that in cases where a bequest was made to one or more non-charitable beneficiaries for life or for a term of years, with an irrevocable remainder for the benefit of charity, an immediate substantial estate tax deduction often was available for the actuarial value of the remainder interest. However this often resulted in the creation of deductions which were, in fact, greatly overstated in comparison to what the charities would eventually receive. Such a situation would arise when trust assets were invested in a manner so as to maximize the income interest by investment in high-income, high-risk assets. Such a technique would enhance the value of the income interest but decrease the value of the charity's remainder interest. At the conclusion of the income interest either by death of the income beneficiary or by the passage of time, the amount actually left for the charity was often far less than the actuarially calculated deduction.

    Congress indeed identified a potentially abusive situation. However the structure of the Galloway Trust is different from the problem sought to be remedied by congressional action. This is not a trust in which a non-charitable beneficiary receives a life interest or an interest for a term of years and the charity receives the remainder interest. In this trust all beneficiaries are treated equally; they are recipients of parallel trusts. The Trustee is aware of the ruling in the case of Zabel vs. United States in which the facts of the case are remarkably similar to the Galloway situation with one important difference. In Zabel there was a distinction between the inheritance of the income beneficiaries and the inheritance of the residuary legatees. As in the Galloway case Zabel required

payment of income of 50% to non-exempt individuals and 50% to charitable organizations. However in Zabel the charitable organizations were the sole residuary legatees. Hence, the Court reasoned that by investing heavily in income producing assets the Trustee could benefit the income beneficiaries at the expense of the residuary legatees and the deduction was denied.

In this case, the income and residuary beneficiaries are the same. The Trustee has no incentive to favor one beneficiary over another because all have a parallel interest in the income and all have a parallel interest in the residue. Thus, the Galloway situation does not fall under the category of cases which Congress was seeking to remedy and the disallowance of deduction should not apply. The deduction should be allowed under Section 2055 (a).

Only one of these trusts are in any way contingent; the trust for the benefit of the individuals. It is this Trust which has the possibility of termination by the death of the individual beneficiaries prior to the termination of the Trust in 2016. The charitable trust has no possibility of termination. In the event of the early termination of either of the individual trusts, then the charitable trusts are benefitted and will receive an even greater portion of the principal and interest.

It is important to note that the actual calculation of the amount of the deduction was not made by the Trustee but rather by the Commonwealth of Pennsylvania in making a determination of the amount charitable deduction for the Pennsylvania Inheritance Tax. Because of the actuarial complexity in determining the portion of the Estate which was entitled to a deduction for charitable purposes due to the life expectancy of the two individual beneficiaries, the Trustee engaged the Pennsylvania Inheritance Tax Department to make the appropriate calculations. The Trustee was advised that the calculation would also be accepted by the Internal Revenue Service in the determination of the charitable deduction for the federal estate tax. In reliance upon these representations, the Trustee prepared and filed his federal estate tax return.

Finally, the Trustee notes that the Internal Revenue Code contains provisions which, under certain circumstances, allow a reformation of a split-interest trust in order to qualify for the charitable deduction. These provisions were enacted to prevent the harsh result which occurs when money is irrevocably and undeniably transferred for charitable uses but the transferor is not given a charitable deduction. That is exactly the case here. This Trust has not sought reformation. However, assuming for the sake of argument that the trust could be reformed, the required reformation would place the parties exactly where they now are. The individuals would receive what they are to receive under the present Trust and the Church would receive what it is to receive under the present Trust. Such a reformation elevates form over substance. The substance of this case is that the Church will receive, at a minimum, one half of the Trust funds. An actuarial calculation indicates the Church will receive more than one-half of the Trust funds. The concerns expressed in the legislative history of the applicable section of the law are not applicable. Therefore, it is clear that the Estate should receive

the charitable deduction.

Under the penalties of perjury, I declare that I have examined the facts stated in this Protest including any accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete.

Respectfully submitted,

BY *[signature]*
Edmond C. Galloway

I hereby declare that I submit this Protest and the accompanying documents and that I know personally that the facts stated in the Protest and accompanying documents are true and correct.

Respectfully submitted,

BY *[signature]*
James R. Steadman, Esq.

G:\Data\Wpfiles\ESTATES\CLIENT\GALLOWAY\100500protest.wpd