## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDMOND C. GALLOWAY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-50 Erie |
| UNITED STATES, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J.

Presently pending before the Court are cross-motions for summary judgment. For the reasons stated below, the Defendant's motion is granted and Plaintiff's motion is denied.

### I. BACKGROUND

Plaintiff, Edmond C. Galloway ("Galloway"), is the successor trustee of the James D. Galloway Revocable Living Trust. The decedent, James D. Galloway, created the trust on or about March 5, 1991. James Galloway, who served as the trustee during his lifetime, amended the trust on three separate occasions, the most recent on September 7, 1996. Upon his death on July 22, 1998, the trust provided that the residue would pass in four equal shares. The residual beneficiaries of James Galloway's trust included two natural persons - Edmund C. Galloway, his son, and Karen Minns, his granddaughter - as well as two charitable entities.

The trust documents generally provide for distributions to each of the four beneficiaries on two separate dates. Each of the residual beneficiaries received 50% of their total expectancy - in other words, 50% of their one-quarter share - in early 2006. The remaining corpus of the trust will be paid to the beneficiaries in four equal one-quarter shares on January 1, 2016. At that point, the trust will cease to exist.

The trust documents specify with respect to the individual beneficiaries that, if either of them is not living at the time of final distribution, his or her share will be distributed to the remaining beneficiaries. If both individual beneficiaries are deceased at the time of final distribution, the entire corpus would go to the charitable beneficiaries.

On its federal estate tax return, the Trust claimed a deduction under 26 U.S.C. § 2055(a) in

the amount of $399,079.33, the portion of the corpus it anticipated would ultimately be distributed to the charitable beneficiaries. The IRS denied the deduction, determining that the trust constituted a "split interest trust" in that it divided the same property between charitable and non-charitable entities. On the basis of 26 U.S.C. § 2055(e)(2), which disallows a deduction where a trust creates a split interest, the IRS required the estate to pay an additional $160,394.13. Plaintiff paid the disputed amount and then filed an appeal to the IRS seeking a refund. The IRS denied the appeal on February 5, 2003.

On February 4, 2005, Plaintiff filed the instant lawsuit. On January 6, 2006, Plaintiff moved for summary judgment. On February 13, 2006, the United States responded to Plaintiff's motion and concurrently filed a cross-motion for summary judgment. This Court heard oral arguments on the motions on April 6, 2006. This issue is thus ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. DISCUSSION

26 U.S.C. § 2055(a) allows a deduction from a decedent's gross estate for the amount of "all bequests, legacies, devises, or transfers to or for the use of a qualifying charitable entity." Section 2055(e)(2), however, disallows a deduction where a trust creates a "split interest" by bequeathing interests in the same property to both charitable and non-charitable beneficiaries:

> **(e) Disallowance of deductions in certain cases. --**
>
> **(2)** Where an interest in property . . . passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless--
>
>> **(A)** in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust . . . or a pooled income fund. . . .

26 U.S.C. § 2055(e)(2). Although Section 2055(e)(2) creates a limited exception that allows a split interest trust to receive a charitable deduction when the trust is created in one of three specified forms - to wit, an annuity trust, a unitrust, or a pooled income fund - it is undisputed that none of those three forms are present here.

The government contends that "[t]his case involves a classic split interest, where interest 'in the same property' passes to both charitable and noncharitable beneficiaries." Estate of Johnson v. United States, 941 F.2d 1318, 1321 (5th Cir. 1991). They point out that the trust at issue was created from one document and one set of property, and is held for both individual and charitable beneficiaries. The government relies upon Johnson, where the decedent created a trust designed to utilize his estate for three purposes: to support his three sisters, to maintain the graves of his family members, and to create a charitable trust to pay for religious education in certain Catholic parishes. Although the estate argued that the decedent's will had created three separate trust interests, the court disagreed, noting that "the will lists 'the purposes of *the* trust' (emphasis added), and establishes no grounds for separating the open-ended, noncharitable bequests to the decedent's surviving sisters and toward grave maintenance from the charitable bequest." Id. at 1320. Since all three purposes were to be funded from the same property in the decedent's estate, the court deemed the trust to be "a classic split interest, where interest 'in the same property' passes to both charitable and noncharitable beneficiaries." Id. (citing § 2055(e)(2)). Accordingly, the trust was unable to deduct the charitable portion of the bequests under 26 U.S.C. § 2055.

Plaintiff argues in response that § 2055(e) does not apply to the Galloway Trust because the

trust does not split interests in the same property. Plaintiff contends that "[t]he Trust in question is for all intents and purposes, and in practical effect, two separate Trusts . . .". (Plaintiff's Brief in Support of Motion for Summary Judgement, p. 5). Plaintiff elaborates on this position more fully in his brief in support of summary judgment:

> [T]he charitable beneficiaries have an undivided 50% interest in the trust, as do the individual beneficiaries. Had Galloway initially split his assets down the middle and established two (2) separate but identical trusts, in two (2) separate but identical (except for the beneficiaries) documents, this matter would not be before the Court today. Nevertheless, the IRS has characterized the Trust as a "split interest" trust and disallowed the deduction calculated by the Pennsylvania Department of Revenue. The question presented, then, is should the IRS be permitted to elevate form so far over substance that the charitable intent and effect of the Trust are ignored, to the detriment of both the individual beneficiaries and the charitable organizations designated by the Trust.

(Brief in support of Plaintiff's Motion for Summary Judgment, p. 5).

In Zabel v. United States, 995 F.Supp. 1036 (D. Neb. 1998), the court dealt with a trust where the income generated by the trust was to be split between charitable and individual beneficiaries for 21 years, with the remaining corpus to be distributed to the charitable beneficiaries at that time. The trust argued that the charitable beneficiaries had "practically" received half of the trust because they had an immediate right to half the income and a remainder interest in all of the principal:

> The plaintiff, through his able trial counsel, argues that it makes little sense to reject the charitable deduction for 50 percent of the trust. He argues that, as a practical matter, no harm can befall the charities, though the trust does not employ one of the three devices specified in section 2055(e)(2)(A). He stresses that, although there is only one trust, the trustee maintains separate accounts. The charities will not be harmed, he states, because the income and principal interests in 50 percent of the trust have effectively (but not legally) merged and belong to the charities.

Zabel, 995 F.Supp. at 1047. The court, however, denied the deduction, noting that, even though separate accounts were maintained for the charitable and individual beneficiaries, the language of the trust instrument created a split interest trust in light of the "plain words" of the statute:

> The decedent intended to create one trust. Her lawyer followed her wishes exactly when he drafted the will. The will is unambiguous. It creates one trust, and that one trust continues to operate. The

> decedent split the interest in the trust principal and income between charitable and noncharitable beneficiaries.
>
> \* \* \* \* \* \* \* \*
>
> Accordingly, applying the plain words of the statute to the facts, we cannot sustain the plaintiff's claim that 50 percent of the trust qualifies for the charitable deduction.

Id. at 1047.

Similarly, in Estate of Edgar v. Commissioner of Internal Revenue, 74 T.C. 983 (1980), *aff'd*, 676 F.2d 685 (3rd Cir. 1982), the tax court rejected the plaintiff's contention that the plain meaning of § 2055(e) should be overlooked "where the economic facts concerning a transfer which provides for [noncharitable beneficiaries] to receive a part interest in property are such that those beneficiaries will never receive any portion of that part interest." Id. at 987. In Edgar, the decedent, Clara Edgar, left a will that provided for the assets of her estate to roll over into a trust fund set up by her sister, the Jean Edgar Vaughan Trust. The recipient trust provided for regular payments to non-charitable individuals from the income of the trust, with the principle remainder passing to various charities upon the death of the non-charitable beneficiaries. Upon Clara Edgar's death, her trust fund argued that the income generated from the Jean Edgar Vaughan Trust was more than sufficient to provide for the regular payments to the non-charitable individuals, such that Clara Edgar's estate, once poured into the Jean Edgar Vaughan Trust, would "never be invaded for the benefit of the [non-charitable] beneficiaries." The court, while recognizing that no portion of the Clara Edgar estate would likely ever be used to satisfy the non-charitable interests, nonetheless denied the charitable deduction:

> The essence of petitioner's argument, thus, is that where the economic facts concerning a transfer which provides for nonqualifying beneficiaries to receive a part interest in property are such that those beneficiaries will never receive any portion of that part interest, section 2055(e) is inapplicable. We disagree.
>
> \* \* \* \* \* \* \* \*
>
> Although this specific situation may not have been regarded as abusive by Congress when it enacted this legislation, as petitioner contends, permitting economic factors to be considered would directly contradict Congress' intent to establish specific rules in this area. It is clear that the trust document created, in legal terms, a remainder interest in favor of the charitable institutions. We hold that such an interest must in all events conform to the statutory requirements.

5

<u>Id</u>. at 987-88.

We agree with the reasoning of these decisions. As in <u>Zabel</u> and <u>Edgar</u>, the trust instrument at issue here splits a single estate between charitable and noncharitable interests.

Plaintiff counters, however, that there is an inherent ambiguity in the language of the statute rendering resort to its legislative history or purpose appropriate. Plaintiff contends that the congressional concerns which animated the passage of the statute are not implicated here given the structure of the Galloway Trust.

At oral argument, Plaintiff's counsel articulated the alleged ambiguity as follows:

> In terms of 2055(e) itself, though, your honor, we believe that there are ambiguities there . . . in that, first of all, 2055(e)(d) really never tells you what a split-interest is. And it doesn't tell you what is meant by an interest in the same property.

(Transcript, p. 5). When pressed on this point, the following exchange occurred:

> The Court: What do you think a split-interest trust is?
>
> Plaintiff: Bear with me here and I'll tell you exactly. I believe that a split interest trust is a trust which has a non-charitable income beneficiary and a charitable remainder beneficiary or vice-versa.
>
> The Court: So, in your view, the lynchpin of split trustum, if you will, is a remainder man?
>
> Plaintiff: That's exactly right.
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> The Court: Okay. On its face what is ambiguous about that language?
>
> Plaintiff: If you look at the statute as a whole, as opposed to just parsing out that particular language, and if you look at the basis for the statute, we believe that that's where the ambiguity comes in. Because 2055(a) starts off with the general presumption that if you have something going to a charity, it's going to be deductible. If you look at 2055(e), and this particular definition, it very narrowly sets forth what it contends are the ways in which you can accomplish that if there is a remainder trust, a split-interest trust. But it really doesn't define what a split-interest trust is.

> The Court:   Well, your position is, so I'm clear, and if it isn't your position, tell me, that an otherwise facially clear statute is rendered unclear by virtue of the Congressional purpose behind the passing of a statue in the first place, is that your point?
>
> Plaintiff:   I would say that would be one argument that we would make.

(Transcript, p. 4).

We are unable, however, to find ambiguity in the statutory language. Indeed, in <u>Johnson</u>, the Fifth Circuit specifically dismissed the suggestion that Section 2055(e) is unclear:

> We consider the pertinent statutory language unambiguous. There is no justification for a judicial divination of an unstated congressional intent to make an exception for the bequest in this case.

<u>Johnson</u>, 941 F.2d at 1319-21(holding that a trust to support the testator's sisters, to maintain graves of family members, and to pay for religious education in certain Catholic parishes did not qualify for a deduction under section 2055(e)(2) because the trust was not a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund); <u>Zabel</u>, 995 F.Supp. at 1047. At oral argument, when questioned on the import of the <u>Johnson</u> and <u>Zabel</u> holdings, Plaintiff's counsel suggested that those cases were wrongly decided. (Transcript, p. 8). However, Plaintiff does not cite any cases for the opposite proposition, to wit, that Section 2055(e) is ambiguous and can only be interpreted by resorting to legislative intent.

As stated above, we find that the statute at issue is facially unambiguous. In <u>Exxon Mobil Corp. v. Allapattah Services</u>, Inc., __ U.S. __, 125 S.Ct. 2611 (2005), the United States Supreme Court warned against the use of legislative history to muddy a facially clear statute:

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.

<u>Exxon</u>, 125 S.Ct. at 2625.

Finally, even if resort to legislative history were appropriate, there is still the potential for the

7

precise dangers feared by the drafters of § 2055(e)(2).[1]  As noted by the government, if either of the individual beneficiaries passes away before the final distribution of the trust corpus in 2016, that person's interest reverts to the remaining beneficiaries, rather than to the individual's heirs. Therefore, although the incentive to do so is remote, there is a possibility that an individual beneficiary would do precisely what the drafter's feared: invest the principle of the trust in high-income, high risk ventures, seek to maximize income and profits in the short-term, and deplete the corpus of the trust prior to distribution in 2016.

Accordingly, based upon Johnson and Zabel, as well as the plain language of the statute, we conclude that the Galloway trust is a split interest.  The trust created from one document and one set of property, and is held for both individual and charitable beneficiaries.  On this basis, we further conclude that the IRS correctly denied the charitable deduction requested by the Trust on the basis of § 2055(e).   Although we are not unsympathetic towards the position taken by the Plaintiff, particularly on the unique factual scenario presented herein, it is the role of Congress to clarify or amend the plain language of § 2055(e) to prevent such results, not this Court.

---

[1]   The Fifth Circuit Court of Appeals has described the purpose behind the enactment of Section 2055(e)(2) as follows:

> Congress passed [§ 2055(e)(2)] in 1969 to prevent abuse of the tax code through trusts that provide for the unrestricted support of uncharitable life interests at the expense of residual bequests (with correspondingly large tax deductions) to charitable foundations.  The law forces an estate to distinguish and value accurately the portions of an estate going to charitable and noncharitable recipients.

Johnson, 941 F.2d at 1319.  More specifically, the statute is designed to prevent a holder of an income interest in a trust from competing with the holder of a charitable remainder by investing in high-income, high-risk assets that increase the value of the income interest at the expense of the charity's remainder interest. Id.; see also Estate of Strock v. United States, 655 F.Supp. 1334, 1336-37 (W.D. Pa. 1987).

## IV. Conclusion

An appropriate Order follows.

| | |
|---|---|
| EDMOND C. GALLOWAY,           )<br>                                                      )<br>                        Plaintiff,      )<br>                                                      )<br>             v.                               )<br>                                                      )<br>UNITED STATES,                      )<br>                                                      )<br>                        Defendant.  ) | Civil Action No. 05-50 Erie |

## **ORDER**

AND NOW, this 9th day of May, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendant United States [Doc. No. 23] is GRANTED and the Motion for Summary Judgment of Plaintiff Edmund C. Galloway [Doc. No. 17] is DENIED.

                                                                            /s/ Sean J. McLaughlin
                                                                            United States District Judge

cm: All parties of record. ___